STATE of Missouri, ex rel. LIBERTY MUTUAL INSURANCE COMPANY, Relator,

v.

The Honorable Carl D. GUM, Respondent.

No. WD 50086.

Missouri Court of Appeals, Western District.

June 27, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

Paul L. Wickens, Mark E. Harris, Morrison & Hecker, Kansas City, for relator.

Andrew J. Gelbach, Warrensburg, John E. Turner, Kansas City, Robert Harris, Warrensburg, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Liberty Mutual Insurance Company (Liberty Mutual) seeks this court's writ of prohibition and/or mandamus compelling The Honorable Carl Gum to enter summary judgment in its favor in the underlying action. Liberty Mutual contends that the principles of res judicata, collateral estoppel, and the law of the case required the trial court to deny Plaintiff's Motion for Leave to Amend, and to grant Liberty Mutual's Motions to Dismiss and Motions for Summary Judgment as to Plaintiff's claims for uninsured, underinsured, and medical payments coverages. Additionally, Liberty Mutual argues that the

insurance policy clearly and unambiguously did not provide separate underinsured motorist or medical payments coverages and, therefore, summary judgment should have been entered in its favor. Alternatively, Liberty Mutual contends that the trial court erroneously did not require the plaintiffs below to follow the Missouri Rules of Civil Procedure regarding summary judgment. It argues that if prohibition does not lie to relieve Liberty Mutual from further litigation, the circuit court should be directed by this court's writ to compel compliance with Rule 74.04 and order plaintiffs to file a formal response to its motion for summary judgment.

The preliminary rule in prohibition was granted. The preliminary rule in prohibition is now quashed and held for naught, and Liberty Mutual's petition for writ of prohibition is denied.

## Procedural History

John and Beverly Frost filed their petition in the Circuit Court of Johnson County, Case No. CV488-548CC, on November 8, 1988, for damages they claimed to have sustained as a result of an automobile accident that occurred on June 15, 1988. Mr. Frost was a passenger in an automobile driven by John Gibson which was struck by the automobile then driven by Hubert White. Mr. Gibson was killed in the accident. Apparently, Mr. White was attempting to pass a third vehicle when the vehicle he was driving struck "head-on" the vehicle then driven by Mr. Gibson. Mr. and Mrs. Frost's petition named Mr. White as the sole defendant.

The automobile driven by Mr. Gibson was owned by Alamo Rent-A-Car, Inc., and insured by a policy of insurance issued by Liberty Mutual. The vehicle driven by Mr. White was not covered by an automobile liability insurance policy. The police accident report reflects that a vehicle driven by Timothy or Patricia Owens was being passed by the vehicle driven by Mr. White immediately prior to the accident. Mr. White testified at trial that the Owens' car interfered with his ability to return to the proper lane of travel by alternately slowing down and speeding up. On December 19, 1988, the Frosts obtained a judgment solely against Mr. White.

On January 17, 1989, after first learning of the December 19, 1988, judgment, Liberty Mutual filed its Motion to Intervene in Case No. CV488-548CC for the purpose of setting aside the judgment. The motion was denied by the trial court, and on August 8, 1989, this court reversed and directed the trial court to allow Liberty Mutual to intervene. *Frost v. White*, 778 S.W.2d 670 (Mo.App.1989) (hereinafter *Frost I* ).

On April 16, 1990, Liberty Mutual filed a Motion to Vacate the December 19, 1988, judgment against Mr. White. The trial court granted the motion and the Missouri Supreme Court upheld the trial court's decision on June 23, 1991. *Frost v. Liberty Mut. Ins. Co.*, 813 S.W.2d 302 (Mo. banc 1991) (hereinafter *Frost II* ).

On March 9, 1989, the Frosts filed a separate declaratory judgment action naming Liberty Mutual and others as parties, Case No. CV489-113CC, praying that the court determine the total uninsured motorist coverages applicable to the Frosts' judgment against Mr. White. The petition also sought declaration of the rights and obligations of the parties and the applicable insurance coverages.

On March 15, 1989, Liberty Mutual filed a Petition for Interpleader and Declaratory Judgment, Case No. CV489-124CC, paying into court $50,000 which Liberty Mutual contended was the total amount of uninsured motorist coverage due under the policy. The Frosts' Petition for Declaratory Judgment and Liberty Mutual's Petition for Interpleader and Declaratory Judgment were consolidated on April 10, 1989.

In August 1989, Liberty Mutual filed a Motion for Summary Judgment on its Petition for Interpleader and Declaratory Judgment arguing that its policy provided only $50,000 per accident in uninsured motorist coverage. The Frosts filed a Motion for Summary Judgment in their declaratory judgment action claiming the policy's uninsured motorist coverage limit was $1,000,000.

The trial court ruled on the Frosts' and Liberty Mutual's motions for summary judg-

ment on October 9, 1990. It found that the Liberty Mutual policy was not ambiguous and provided a $50,000 single-limit uninsured motorist coverage of all injuries to all persons. This court affirmed the trial court's ruling on February 25, 1992, holding that "Liberty Mutual's policy accord[ed] single-limit uninsured motorist coverage of $50,000 for all of the injuries of all of the parties arising out of the Gibson–White collision." *Frost v. Liberty Mut. Ins. Co.*, 828 S.W.2d 915, 920 (Mo.App.1992) (hereinafter *Frost III* ).

In June of 1992, the Frosts filed their Application for Leave to File an Amended Petition in Case No. CV488–548CC, the original automobile accident case in which judgment had been vacated, to add claims against John Gibson, Timothy Owens, Patricia Owens, and Liberty Mutual. The trial court granted the Frosts leave to file their amended petition. Count III of the amended petition alleged that the Liberty Mutual policy contained uninsured/underinsured motor vehicle and medical payment coverages and that the company refused to make full payment under the policy's coverages.

On July 31, 1992, Liberty Mutual filed a "Motion to Dismiss Count III of Plaintiffs' Amended Petition, or, in the Alternative, for Summary Judgment, and for Sanctions" arguing that the Frosts' claims were barred under the principles of res judicata, collateral estoppel, and the law of the case by virtue of this court's holding in *Frost III.* The motion remained pending when on December 13, 1993, Liberty Mutual filed a motion to be severed from the automobile accident trial, Case No. CV488–548CC.

On February 14, 1994, two days before the automobile accident trial was to commence, Liberty Mutual filed a "Supplemental Motion to Dismiss Plaintiff's Claim for Underinsured Motorist Coverage for Failure to State a Claim Upon Which Relief Can Be Granted, or, in the Alternative, to Sever Plaintiff's Claims for Insurance Coverages against Liberty Mutual." The trial court issued its written order three days later denying Liberty Mutual's July 31, 1992, "Motion to Dismiss, or in the Alternative for Summary Judgment, and for Sanctions," and Liberty Mutual's

February 14, 1994, "Supplemental Motion to Dismiss Plaintiff's Claim for Underinsured Motorist Coverage." The court granted Liberty Mutual's alternative Motion to Sever all coverage claims from the underlying automobile accident trial.

With its motions having been ruled, Liberty Mutual answered Plaintiff's Amended Petition and filed a "Counterclaim for Declaratory Judgment" again asserting that the Frosts' claims for additional coverages under the policy were barred under the principles of res judicata, collateral estoppel, and the law to the case.

From June 27 through June 29, 1994, trial was held in the automobile accident case, Case No. CV488–548CC, solely to assess the relative fault of the alleged tortfeasors and to ascertain the Frosts' damages. The jury found Mr. White to be 45% at fault, Timothy Owens 45% at fault, Patricia Owens 10% at fault, and John Gibson 0% at fault.

On August 26, 1994, the Frosts filed notices to take the depositions of Doug Cauti, Louise Wilkins, Sally Hasham, and Tom Livingston regarding the remaining issues in Case No. CV488–548CC, the uninsured/underinsured motorist and medical payment coverages. On September 2, 1994, Liberty Mutual filed a "Motion for Protective Order" to prevent the noticed depositions from proceeding. Liberty Mutual also filed on September 12, 1994, a "Motion for Summary Judgment" on its "Counterclaim for Declaratory Judgment" again arguing that the claims pursued by the Frosts were barred. A second "Motion for Protective Order" was filed on September 14, 1994, to prevent additional written discovery. The trial court denied Liberty Mutual's "Motions for Protective Order and Summary Judgment" on September 16, 1994. Liberty Mutual's application for extraordinary remedy followed.

### Prohibition as a Proper Remedy

The primary purpose of prohibition is to prevent a trial court from exceeding its jurisdiction. *State ex rel. Armstrong, Teasdale, Schlafly, & Davis v. Kohn*, 850 S.W.2d 86, 89 (Mo. banc 1993) (citing *State ex rel. City of St. Louis v. Kinder*, 698 S.W.2d 4, 6

(Mo. banc 1985)). Prohibition is generally allowed to prevent unnecessary, useless, and inconvenient litigation. *State ex rel. Police Retirement Sys. v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994); *State ex rel. Hamilton v. Dalton*, 652 S.W.2d 237, 239 (Mo.App. 1983). Prohibition will lie only where the trial court lacks jurisdiction and there is not an adequate remedy by appeal. *State ex rel. Riederer v. Mason*, 810 S.W.2d 541, 543 (Mo. App.1991). Prohibition is not a substitute for direct appeal and cannot be used to undo erroneous judicial proceedings. *State ex rel. Douglas Toyota III, Inc. v. Keeter*, 804 S.W.2d 750, 752 (Mo. banc 1991). "Prohibition is not generally intended as a substitute for correction of alleged or anticipated judicial errors and it cannot be used to adjudicate grievances that may be adequately redressed in the ordinary course of judicial proceedings." *Id.* (citing *Knisley v. State*, 448 S.W.2d 890, 892 (Mo.1970)).

■ As point one, Liberty Mutual claims that the trial court did not require the plaintiffs below to follow the Missouri Rules of Civil Procedure regarding summary judgment. Liberty Mutual argues that, although the trial court denied its motions for summary judgment, the Frosts have never filed a proper responsive pleading, as required by Rule 74.04, to its motion for summary judgment regarding the claims asserted in Count III of the amended petition. Liberty Mutual contends that a writ of prohibition is appropriate to force compliance with Rule 74.04. It does not, however, cite any authority for this contention.

Rule 74.04(c)(3) provides that a moving party is entitled to summary judgment when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Although a party may fail to respond to a motion for summary judgment at his peril, such party is not compelled to respond to the motion if the movant has failed to establish the requisite provisions for summary judgment. Thus, Liberty Mutual seeks appellate review to determine whether it has established entitlement to summary judgment. Whether opposing parties should respond to Liberty Mutual's motion for summary judgment is not an appropriate issue for extraordinary relief.

■ The same is true of Liberty Mutual's second point. It argues that the policy clearly and unambiguously does not provide separate underinsured or medical payments coverages and, therefore, summary judgment should have been entered in Liberty Mutual's favor. Although denial of a motion for summary judgment is not normally subject to appellate review, even when appeal is taken from the final judgment and not from the denial of the motion for summary judgment, *State ex rel. Missouri Div. of Transp. v. Sure–Way Transp., Inc.*, 884 S.W.2d 349, 351 (Mo.App.1994), the merits underlying the motion are reviewable. Prohibition, therefore, is not appropriate for this claim.

■ Liberty Mutual also argues that under principles of res judicata, collateral estoppel, and the law of the case, the trial court should have denied Plaintiff's Motion for Leave to Amend, and should have granted Liberty Mutual's Motions to Dismiss and Motions for Summary Judgment as to Plaintiff's claims for uninsured, underinsured, and medical payments coverages. Prohibition is appropriate in a case where summary judgment was sought and denied in the trial court on grounds of res judicata. *State ex rel. Tinnon v. Mueller*, 846 S.W.2d 752, 757 (Mo. App.1993); *State ex rel. Hamilton v. Dalton*, 652 S.W.2d 237, 239 (Mo.App.1983). Where reference to the pleadings alone conclusively demonstrates that the pending petition attempts to state a cause of action barred by res judicata, summary judgment should be entered as a matter of law, and extraordinary relief is appropriate to compel summary judgment. *Id.* The relator, however, must establish that respondent judge will usurp jurisdiction in overruling the motion for summary judgment. *Dalton*, 652 S.W.2d at 239.

### Res Judicata Claim

■ The doctrine of res judicata makes a judgment conclusive in a subsequent action between the same parties as to all issues tried and as to all issues which might have been litigated. *Huska v. Huska*, 721 S.W.2d 120, 121 (Mo.App.1986). Res judicata

applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time. Put otherwise, a party may not litigate an issue and then, upon an adverse verdict, revive the claim on cumulative grounds which could have been brought before the court at the first proceeding.

*King Gen. Contractors v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991) (citations omitted). The original claim is considered as merged in judgment, and the plaintiff is precluded from maintaining any further action on the claim itself. *Farley v. Missouri Dept. of Natural Resources,* 592 S.W.2d 539, 540 (Mo.App.1979).

The same rule, however, does not apply in suits for declaratory judgments. *Id.* at 540. In *Farley v. Missouri Department of Natural Resources,* this court addressed for the first time the issue of whether a plaintiff's claim for damages merged on principles of res judicata in a prior declaratory judgment proceeding between the same parties. *Id.* The court found that the provisions of Rule 87.10 and section 527.080, RSMo 1978 contemplated additional litigation when issues in a declaratory judgment proceeding have been completed. *Id.* at 541. In concluding that the plaintiff's claim for damages was not precluded, the court held that "the effect of a prior declaratory judgment, although conclusive as to matters declared, is not to merge in the judgment a subsequent claim for coercive relief arising out of the same cause of action." *Id. See also Ganaway v. Shelter Mut. Ins. Co.,* 795 S.W.2d 554, 562 (Mo.App.1990).

In this case, Liberty Mutual argues that the decision in *Frost III* precludes the Frosts' claims for damages under the uninsured, underinsured, and medical payments coverages regarding the Gibson–White accident. *Frost III* arose from a grant of summary judgment in a declaratory judgment proceeding. Liberty Mutual filed a Petition for Interpleader and Declaratory Judgment in March of 1989 asserting that the total amount of uninsured motorist coverage available was $50,000. It filed a Motion for Summary Judgment of the declaratory judgment petition which the trial court granted. This ruling was affirmed in *Frost III.* Liberty Mutual now asserts the holding in *Frost III* that the Liberty Mutual policy accords single-limit uninsured motorist coverage of $50,000 for all of the injuries of all of the parties arising out of the collision bars the Frosts' claims in Count III of the amended petition against Liberty Mutual for fair and reasonable damages under the policy's uninsured as well as its underinsured motor vehicle and medical payments coverages.

The holding in *Frost III* was merely a declaration of the maximum amount of uninsured motorist coverage under the Liberty Mutual policy regarding the Gibson–White accident. The Frosts can not relitigate the issue of the available amount of uninsured motor vehicle coverage under the policy under the principle of res judicata. However, a subsequent action for coercive relief, including damages, arising out of the same cause of action is not merged into the original declaratory judgment. In Count III of their amended petition for damages, the Frosts acknowledge the uninsured policy limits are $50,000 but seek "the policy limits of all applicable insurance coverages." *Frost III* determined "Liberty Mutual's policy accord[ed] *single-limit uninsured motorist coverage of $50,000* for all of the injuries of all of the parties arising out of the Gibson–White collision." *Frost III* at 920 (Emphasis added). Additional coverage, if any, was not determined by the declaratory judgment. The claim in Count III is not barred by *Frost III* under the principle of res judicata.

Liberty Mutual also argues that collateral estoppel and the law of the case bar the Frosts' claims in the amended petition. It fails, however, to argue or cite any authority for these claims. The claims are considered abandoned. *Collins v. Finley,* 886 S.W.2d 943, 945 (Mo.App.1994).

The preliminary rule in prohibition is quashed and held for naught, and Liberty

Mutual's petition for writ of prohibition is denied.

All concur.